# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARCO A. TORRES, Individually and On Behalf of All Others Similarly Situated,<br><br>       Plaintiff,<br><br>v.<br><br>CONTINENTAL AKTIENGESELLSCHAFT; CONTINENTAL TIRE THE AMERICAS, LLC; COMPAGNIE GÉNÉRALE DES ÉTABLISSEMENTS; MICHELIN NORTH AMERICA, INC.; NOKIAN TYRES PLC; NOKIAN TYRES INC; NOKIAN TYRES U.S. OPERATIONS LLC; THE GOODYEAR TIRE & RUBBER COMPANY; PIRELLI & C. S.P.A.; PIRELLI TIRE LLC; BRIDGESTONE CORPORATION; BRIDGESTONE AMERICAS, INC.; DOES 1-100,<br><br>       Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

**Table of Contents**

I.      NATURE OF THE ACTION ................................................................ 1

II.     JURISDICTION AND VENUE .......................................................... 2

III.    PARTIES .......................................................................................... 3

      A.   PLAINTIFF ......................................................................... 3

      B.   DEFENDANTS ................................................................... 3

      C.   AGENTS AND CO-CONSPIRATORS ................................ 9

IV.    FACTUAL ALLEGATIONS ........................................................... 10

      A.   The Tire Market ................................................................ 10

      B.   Defendants' Dramatic and Coordinated Tire Price Increases ................................... 14

      C.   Price Coordination Through Revenue Management Software ............................... 20

      D.   Governmental Antitrust Investigation and Dawn Raids ......................... 22

      E.   Defendants are Recidivist Violators of Antitrust Laws ......................... 23

V.     EQUITABLE TOLLING AND FRAUDULENT CONCEALMENT ............................ 24

VI.    CLASS ACTION ALLEGATIONS ................................................ 25

VII.   INTERSTATE TRADE AND COMMERCE ................................... 27

VIII.  ANTITRUST INJURY .................................................................... 27

IX.    CLAIMS FOR RELIEF ................................................................... 28

X.     PRAYER FOR RELIEF .................................................................. 29

XI.    JURY TRIAL DEMANDED ........................................................... 30

Plaintiff Marco A. Torres ("Plaintiff"), individually and on behalf of all others similarly situated (the "Class," as defined below), upon personal knowledge as to the facts pertaining to himself, and upon information and belief as to all other matters, and based on the investigation of counsel, brings this Class Action Complaint for damages, injunctive relief, and other relief pursuant to the federal antitrust laws against Continental Aktiengesellschaft; Continental Tire the Americas, LLC; Compagnie Générale des Établissements; Michelin North America, Inc.; Nokian Tyres plc; Nokian Tyres Inc; Nokian Tyres U.S. Operations LLC; The Goodyear Tire & Rubber Company; Pirelli & C. S.p.A.; Pirelli Tire LLC; Bridgestone Corporation; Bridgestone Americas, Inc., and unidentified Doe Defendants (collectively, "Defendants").   Plaintiff and the Class demand a trial by jury on all matters so triable.

## I.    NATURE OF THE ACTION

1.    This action arises from Defendants' unlawful agreement to fix the prices of new replacement tires for passenger cars, vans, trucks, and buses ("Tires") sold in the United States.

2.    Defendants are major manufacturers and sellers of Tires controlling almost two-thirds of the global and United States markets for Tires and generating billions of dollars in sales annually.

3.    Beginning no later than January 1, 2020 and continuing until the adverse effects of their anticompetitive conduct have ceased (the "Class Period"), Defendants contracted, combined and/or conspired to fix, raise, maintain, or stabilize prices for Tires sold in the United States.

4.    Defendants effectuated their price fixing conspiracy by, among other means, signaling price increases via public communications and other public statements, coordinated lock-step price increases, and implementing revenue management software to facilitate and exchange pricing information.

5.    The European Commission ("EC") is currently investigating "companies active in the tyres industry in several Member States."[1]  On January 30, 2024, the EC announced dawn raids

---

[1] https://ec.europa.eu/commission/presscorner/detail/en/ip_24_561

over suspicion that these companies "violated EU antitrust rules that prohibit cartels and restrictive business practices," specifically that price coordination took place amongst these companies.[2]

6.      Defendants' unlawful agreement to fix prices of Tires is supported by, among other factors: (i) Defendants' sudden and dramatic parallel price increases, which absent a conspiracy to fix prices, ran contrary to their economic interests; (ii) the EC dawn raids of certain Defendants; (iii) the high level of market concentration in the Tire market; (iv) significant barriers to entry; (v) lack of economic substitutes for Tires; and (vi) the myriad of opportunities that employees of Defendants had to compete with one another to fix prices of Tires, coupled with their motivation to achieve such an unlawful end.

7.      Defendants' unlawful agreement caused direct purchasers of Tires in the United States, including Plaintiff and the Class, to pay supra-competitive prices for Tires sold by Defendants in the United States in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

8.      Plaintiff seeks to represent a Class of all persons that purchased Tires directly from Defendants within the United States from January 1, 2020 until the time that the adverse effects of Defendants' anti-competitive conduct ceased (the "Class"). Plaintiff on behalf of himself and the members of the Class, seeks to recover treble damages, injunctive relief, and other relief as appropriate, based on Defendants' violations of the federal antitrust laws.

## II.      **JURISDICTION AND VENUE**

9.      Plaintiff brings this action under Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15 and 26) to recover damages suffered by the Class, costs of suit, including attorneys' fees, injunctive relief, and for such other relief as is afforded for injury caused by Defendants' violations of Section 1 of the Sherman Act (15 U.S.C. § 1).

10.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337(a) and Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15(a) and 26).

11.      This Court has personal jurisdiction over Defendants because they purposefully

---

[2] *Id.*

directed their business activity toward this jurisdiction and had substantial contacts with this jurisdiction, and because the claims for relief arise from and relate to illegal acts committed by Defendants within this jurisdiction.

12.     Venue is proper in this district pursuant to Sections 4, 12 and 16 of the Clayton Act and pursuant to 28 U.S.C. §§ 1391(b), (c), and (d) because at all times relevant to the Complaint, one or more Defendants resided, transacted business, was found, had agents in, or engaged in substantial activity in this District, and a substantial portion of affected interstate trade and commerce described in the Complaint was carried out in this District. Defendant Michelin North America, Inc. at all relevant times was incorporated under the laws of the State of New York.

13.     The activities of Defendants, as described herein, were within the flow of, were intended to, and did have direct, substantial and reasonably foreseeable effects on, interstate commerce, including in this District.

## III.   PARTIES

### A.   PLAINTIFF

14.     Plaintiff Marco A. Torres is a resident of the State of Connecticut. Plaintiff purchased Tires directly from one or more of the Defendants during the Class Period at supra-competitive prices.

### B.   DEFENDANTS

#### 1.   Continental

15.     Defendant Continental Aktiengesellschaft ("Continental AG") is a German company with its headquarters at Vahrenwalder Strasse 9, 30165 Hannover, Germany. Continental AG has four group sectors: Automotive, Tires, ContiTech, and Contract Manufacturing.[3] The Tires group has five business areas: (i) Original Equipment, (ii) Replacement

---

[3] Continental 2022 Annual Report, pg. 26
https://cdn.continental.com/fileadmin/__imported/sites/corporate/_international/english/hubpages/30_20investors/30_20reports/annual_20reports/downloads/continental_annual_report_2022.pdf?_gl=1*9f4olq*_ga*MTcxMDgzNzQ4Ni4xNzA2NjMyMDgz*_ga_CXY4Q1X5YZ*MTcwNjcxNTA5MS4zLjEuMTcwNjcxNTI1NS4wLjAuMA.

APAC, (iii) Replacement EMEA, (iv) Replacement the Americas, and (v) Specialty Tires.[4]

16.     In its 2022 Annual Report, Continental AG reported that its "Tires group sector achieved a particularly positive result, even surpassing expectations with an adjusted EBIT margin of 13.1 percent."[5] In 2022, Continental AG reported sales of €14 billion globally for its tire group.[6] Continental AG's tire group boasts 56,987 employees worldwide.[7]

17.     In the Tires group sector, sales to dealers and end users represent the largest share of the tire-replacement business.[8] For the Tires group sector, economies of scale are important drivers of profitability. For that reason, "manufacturing takes place at major locations in the dominant automotive markets, namely Europe, the U.S. and China.[9]

18.     Defendant Continental Tire the Americas, LLC ("Continental U.S.") is a limited liability company incorporated under the laws of Ohio, with its principal place of business at 1830 MacMillian Park Drive, Fort Mill, SC 29707. Continental U.S. "manufactures and distributes a complete premium line of passenger, light truck and commercial tires for original equipment and replacement markets."[10] Continental US sells its tires through "independent tire dealers, car dealers, and mass retail companies across North America."[11] Continental U.S. has manufacturing facilities in Barnseville, Georgia (Tire Cord [textile]), Mt. Vernon, Illinois (Passenger/light truck/Commercial truck tires), Sumter, South Carolina (passenger/light truck tires), and Jackson, Missouri (commercial truck tires).[12]

19.     Continental U.S.'s headquarters in Fort Mill, SC is the "operational hub for business in the region and oversees all tire product lines including passenger, light truck,

---

[4] *Id.* at 75.
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.* at 26
[9] *Id.* at 28.
[10] https://www.ustires.org/continental-tire-americas-llc
[11] *Id.*
[12] https://www.ustires.org/continental-tire-americas-llc

commercial, two wheel and specialty tires."[13] The facility has 500+ employees and includes teams for engineering & technology, sales & marketing, and "central functions."[14]

20.    Continental U.S.'s Sumter Plant is "a tire manufacturing facility [that] produces high-quality, premium lines of passenger and light truck tires for original equipment and replacement markets."[15] It has a "State of the Art manufacturing facility with a growing team of more than 1200 employees."[16]

### 2.    Michelin

21.    Defendant Compagnie Générale des Établissements ("CGEM") is organized under the laws of France with its principal place of business at 23 place des Carmes-Déchaux, 63000 Clermont-Ferrand, France.  CGEM is the Michelin Group's parent company, which directly or indirectly owns all of its subsidiaries.[17]  CGEM's two main subsidiaries are Manufacture Française des Pneumatiques Michelin (MFPM), a wholly-owned subsidiary that coordinates all of the Group's manufacturing, sales and research operations in France and Compagnie Financière Michelin (CFM), a wholly-owned subsidiary that owns most of the Group's manufacturing, sales and research companies outside of France and coordinates their operations.[18]

22.    Defendant Michelin North America, Inc. is a corporation organized under the laws of the State of New York with its principal place of business at One Parkway South Greenville, SC 29615-5022.  Michelin North America designs, manufactures and sells tires for every type of vehicle, including airplanes, automobiles, bicycles, earthmovers, farm equipment, heavy-duty trucks and motorcycles.[19]  Michelin is one of the leading manufacturers of tires in the United States. In 2022, Michelin had €10.92 billion in sales, 80% of which were generated in the

---

[13] https://www.continental.com/en-us/career/our-locations/fort-mill/
[14] https://www.continental.com/en-us/career/our-locations/fort-mill/
[15] https://www.continental.com/en-us/career/our-locations/sumter/
[16] *Id.*
[17] Michelin 2022 Universal Registration Document, at pg. 403.
[18] *Id.*
[19] https://www.ustires.org/michelin-north-america-inc

United States.[20] Michelin employs 23,000 people across 34 plants in the United States and Canada.[21] Michelin is one of the leading manufacturers of tires in the United States with manufacturing facilities in, *inter alia*, Alabama (light trucks and passenger tires), Indiana (car tires), Oklahoma (passenger tires), and South Carolina (passenger tires and truck and bus tires).

### 3.    Nokian Tyres

23.    Defendant Nokian Tyres plc is organized under the laws of Finland with its principal place of business at Pirkkalaistie 7, P.O. Box 20, 37101 Nokia, Finland. Nokian Tyres plc is the parent company of the Nokian Tyres Group, which includes subsidiaries worldwide. Nokian Tyres plc develops and manufactures tires for passenger cars, trucks, and heavy machinery.

24.    Defendant Nokian Tyres Inc. is a corporation organized under the laws of the State of Delaware. It is a fully owned subsidiary of Nokian Tyres U.S. Holdings Inc., and an indirect subsidiary of Nokian Tyres plc. In December of 2018, Nokia Tyres announced its new headquarters located at 501 Union Street in Nashville, Tennessee, which would house Nokia Tyres' Vice President along with members of the company's sales, customer service, IT, logistics, finance, and marketing teams.[22] Nokia Tyres has a manufacturing facility located at 520 Nokian Tyres Dr., Dayton, TN., 37321 that produces car and light truck all season tires and all-weather tires for consumers in the United States and Canada.

25.    Defendant Nokian Tyres U.S. Operations LLC is a limited liability company organized under the laws of the State of Tennessee. It is a fully owned subsidiary of Nokian Tyres U.S. Holdings Inc., and an indirect subsidiary of Nokian Tyres plc.

### 4.    Goodyear

26.    Defendant The Goodyear Tire & Rubber Company ("Goodyear") is a corporation organized under the laws of the State of Ohio with its principal place of business at 200 Innovation Way Akron, Ohio 44316-0001. Goodyear is one of the world's leading tire companies, with one

---

[20] Michelin 2022 Universal Registration Document, at pg. 14
[21] https://michelinmedia.com/site/user/files/1/MNA-Fact-Sheet-2023_2.pdf
[22] https://www.nokiantires.com/company/news-article/nokian-tyres-thriving-in-new-nashville-headquarters/

of the most recognizable brand names.  Goodyear manufactures its products in 57 facilities in 23 countries and has operations in most regions of the world.[23]  Goodyear manufactures and sells under the Goodyear, Cooper, Dunlop, Kelly, Debica, Sava, Fulda, Mastercraft and Roadmaster brands.[24]  Approximately 86% of Goodyear's sales in 2022, 85% in 2021 and 84% in 2020 were for tire units.[25]  The principal channel for the sale of Goodyear and Cooper brand tires in Americas is a large network of independent dealers.  Goodyear, Cooper, Dunlop, Kelly and Mastercraft brand tires are sold to numerous national and regional retailers, in Goodyear Company-owned stores in the United States, and through the wholesale channel, including through TireHub, LLC, Goodyear's national wholesale tire distributor in the United States, and a network of aligned U.S. regional wholesale tire distributors.[26]

### 5.    Pirelli

27.    Defendant Pirelli & C. S.p.A. is organized under the laws of Italy with its principal place of business at Via Bicocca degli Arcimboldi, 3, 20126 Milano MI, Italy.  Pirelli designs, manufactures, and distributes tires for cars, motorcycles, and bicycles.  Pirelli has a commercial presence in over 160 countries and 19 manufacturing sites in 12 countries.[27]

28.    Defendant Pirelli Tire LLC is a foreign limited liability company organized under the laws of Delaware with its principal place of business located at 100 Pirelli Drive Rome, GA 30161.  Pirelli Tire LLC includes the Modular Integrated Robotized System (MIRS) facility and research and development center at its Rome, Georgia headquarters, a state-of-the-art manufacturing plant in Silao, Mexico, sales and marketing offices in New York City, Los Angeles, Detroit, Montreal and Atlanta, and a prestige flagship store in Los Angeles.[28]  The company

---

[23] Goodyear 10K 2022, pg. 2. https://corporate.goodyear.com/content/dam/goodyear-corp/documents/annualreports/2022%20Annual%20Report.pdf

[24] https://goodyear.gcs-web.com/static-files/7ebb1867-1e25-49d8-98a1-b60e30bb1296

[25] https://goodyear.gcs-web.com/static-files/7ebb1867-1e25-49d8-98a1-b60e30bb1296

[26] Goodyear 2023 10K, pg. 3. https://goodyear.gcs-web.com/static-files/7ebb1867-1e25-49d8-98a1-b60e30bb1296

[27] https://www.ustires.org/pirelli-tire-llc

[28] https://www.ustires.org/pirelli-tire-llc

manufactures, distributes, and markets original equipment and replacement tires for export and domestic car/motorcycle applications.

### 6.    Bridgestone

29.    Defendant Bridgestone Corporation is organized under the laws of Japan with its principal place of business at 1-1, Kyobashi 3-chome, Chuo-ku, Tokyo 104-8340.  Bridgestone Corporation is the parent corporation of the Bridgestone Group (the "Group"), which refers to all Group companies, including Bridgestone Americas ("BSAM"), Bridgestone China, Asia Pacific ("BSCAP"), Bridgestone Europe, Russia, Middle East, India, and Africa ("BSEMIA"), and Bridgestone Japan ("BSJP").[29]  Bridgestone Corporation is the world's largest tire and rubber company.[30]

30.    Defendant Bridgestone Americas, Inc. ("BSAM") is incorporated under the laws of Nevada with its principal place of business at 200 4th Ave, Suite 100, Nashville, Tennessee, 37201-2256.  BSAM and its subsidiaries develop, manufacture, and market a wide range of Bridgestone, Firestone and associate brand tires.[31]  BSAM has U.S. manufacturing facilities in Arkansas, Georgia, Iowa, Illinois, North Carolina, Ohio, South Carolina, Tennessee, and Texas.[32]  During the Class Period, BSAM sold Tires in the United States through, among other means, its wholly-owned subsidiary Bridgestone Retail Operations which owns and operates Firestone Complete Auto Care.

### 7.    DOE Defendants

31.    DOE Defendants 1–100 are other individuals or entities who engaged in or abetted the unlawful conduct described in this complaint but whose identities are presently unknown to Plaintiff.  Plaintiff may amend this Complaint to allege the names of additional Defendants as they are discovered.

---

[29] Bridgestone 3.0 Journey, 2023 Integrated Report at pg. 3.
https://www.bridgestone.com/ir/library/integrated_report/pdf/2023/ir2023_single.pdf
[30] https://www.ustires.org/bridgestone-americas-inc
[31] https://www.ustires.org/bridgestone-americas-inc
[32] *Id.*

## C.    AGENTS AND CO-CONSPIRATORS

32.    The anticompetitive and unlawful acts alleged against the Defendants in this Complaint were authorized, ordered or performed by Defendants' respective officers, agents, employees, or representatives, while actively engaged in the management, direction, or control of Defendants' businesses or affairs.

33.    Each corporate Defendant's agents operated under the authority and apparent authority of its respective principals.

34.    Each corporate Defendant, through its respective subsidiaries, affiliates, and agents, operated as a single unified entity.

35.    Various persons and/or firms not named as Defendants herein may have participated as co-conspirators in the violations alleged herein and may have performed acts and made statements in furtherance thereof.

36.    Each Defendant acted as the principal or agent of, or for, other Defendants with respect to the acts, violations, and common course of conduct alleged herein.

37.    When Plaintiff refers to a corporate family or companies by a single name in their allegations of participation in the conspiracy, it is to be understood that the Plaintiff is alleging that one or more employee or agent of entities within the corporate family engaged in conspiratorial acts on behalf of all of the Defendant companies within that family.  Because Defendants market themselves as corporate families, individual participants in the conspiratorial acts did not always know the corporate affiliation of their counterparts, nor did they recognize the distinction between the entities within a corporate family.  Furthermore, to the extent that subsidiaries within corporate families distributed the Tire products discussed in this Complaint, these subsidiaries played a significant role in the conspiracy because Defendants wished to ensure that the prices paid for such products would not undercut their pricing agreements.  Thus, all Defendant entities within the corporate families were active, knowing participants in the conspiracy to maintain supra-competitive prices.

9

IV.    **FACTUAL ALLEGATIONS**

A.    **The Tire Market**

38.    All passenger cars, vans, trucks and buses use tires.  The primary purpose of tires is to provide traction between the vehicle and the road as well as shock absorption for impact. When tires become damaged or otherwise worn-out, they need to be replaced to ensure that vehicles remain safe.  Replacement tires are specifically designed for replacing damaged or worn tires.  These are different from the new tires that are delivered with brand-new vehicles which are referred to as OEM (original equipment manufacturer) tires.

39.    Given the millions of vehicles on the road in the United States, there is a constant need for Tires.  For example, in 2022 the United States market for Tires was sized at $61 billion.

40.    For at least as long as the Class Period, the Tire industry has been characterized by numerous factors that facilitated Defendants' conspiracy.  By way of illustration and not limitation, the industry has exhibited (1) market concentration; (2) high barriers to entry; (3) interchangeability of products; (4) inelasticity of demand; and (5) ease of information sharing among Defendants.

41.    **Market Concentration**.  The Tire market is highly concentrated where a small number of firms dominate the market.  This concentration makes the Tire market more susceptible to cartelization – a smaller group of competitors is better able to solve the coordination and trust problems that can prevent cartel formation or destabilize an existing cartel.

42.    The U.S. Tire market is oligopolistic, with three of the Defendants – Bridgestone, Michelin and Goodyear – controlling the lion-share of the market.  The Defendants combined market share makes up approximately 65% of the market.  The industry is dominated by established corporations, with multinational reach and access to resources and capital.

43.    This market structure gives Defendants a huge influence over price and other aspects of the market.  Oligopolies develop in industries that require a large sum of money to start. Existing companies in oligopolies often have cost advantages as a result of mass production, volume discounts from suppliers, and economies of scale.

44.    **High Barriers to Entry**.  A collusive agreement that raises product prices above competitive levels would, under basic economic principles, attract new entrants seeking to benefit from supra-competitive pricing.  When, however, there are significant barriers to entry, the new entrants are much less likely to enter the market.

45.    Companies seeking to enter the Tire market confront significant barriers to entry, including large up-front capital investments to establish modern manufacturing plants and significant investments in intellectual property and research and development.  New entrants would face high hurdles to developing the technology, infrastructure and workforce needed to manufacture and sell Tires at scale.

46.    Markets with high barriers to entry are more conducive to collusion.  When a market is protected by high barriers to entry, conspirators are better able to agree to a high price with less worry that new firms will enter the market and undercut their pricing.

47.    **Interchangeability of Products**.  Defendants make similar models of Tires that do not differ significantly in quality, appearance, or use.  Tires from one Defendant can be exchanged for Tires of another Defendant with similar specifications.  When products have a high degree of interchangeability, the primary way to compete is on the basis of price.  The avoidance of price-based competition is a primary motivation for forming a cartel.  Thus, cartels are more likely when the participants sell an interchangeable product.  Where a product is highly interchangeable, cartel behavior is facilitated because cartel members can more easily monitor and detect defections from a price-fixing agreement.

48.    **Inelasticity of Demand**.  Elasticity describes the sensitivity of supply and demand to changes in one or the other such that demand is inelastic if an increase in the price of a product results only in a small decline in the quantity sold of that product, if any, such that customers have nowhere to turn for alternative, cheaper products of similar quality and so continue to purchase despite a price increase.

49.    Industries with inelastic demand are more susceptible to collusion because of the large increases in revenue resulting from the higher cartel prices.  Thus, when there are few or no

substitutes for a product, purchasers have little choice but to pay higher prices in order to purchase these products.

50.     Tires are a fundamental and necessary component of vehicles.  When Tires are damaged, they must be replaced.  And there are no functional products that compete with Tires; that is, Tires perform a specific function that cannot be replicated through the inclusion of substitute products.

51.     Purchasers need Tires in order for their automobile to function.  Since demand for tires is derived from the need to use the vehicle, purchasers cannot be induced to buy less of the product through price changes.

52.     Because the price of Tires is highly inelastic, Defendants were able to and did collectively raise prices to supracompetitive levels without losing sales.  For example, Bridgestone America's chief operating officer reported, "We're certainly seeing a red-hot economy that, despite the price increases and inflation, demand still remains quite strong."[33]

53.     **Ease of Information Sharing**.  Because of their common memberships in trade associations, there were many opportunities for Defendants to collude by discussing competitive information.  Trade associations and other business relationships can provide a pretense under which conspirators can exchange sensitive competitive information such as market share and pricing.

54.     Each of the Defendant families is a member of the U.S. Tire Manufacturers Association ("USTMA").  The USTMA is the national trade association for tire manufacturers that produce tires in the United States.

55.     Senior executives from Defendants currently serve on the Board of Directors of the USTMA.  The USMTA board consists of the following individuals that work for Defendants:

- Alexis Garcin—Michelin, Chairman and President.
- David Reese—Goodyear, Vice President, Americas Product Development.

---

[33] https://www.tirebusiness.com/news/rising-tire-prices-affected-several-factors

- Paolo Ferrari— Bridgestone, President, Chief Executive Officer, and Chief Operating Officer.

- Jochen Etzel— Continental, Chief Executive Officer.

- Tommi Heinonen—Nokian Tyres, Vice President North America

- Maureen Kline—Pirelli, Vice President, Public Affairs & Sustainability

56.    The USTMA holds a number of annual conferences and meetings where Defendants had the opportunity to meet and discuss pricing.  For example, the USTMA holds a spring and fall meeting for its board members annually, including on July 29, 2020[34], October 6, 2021[35], January 25, 2022[36], October 6, 2022,[37] April 3–4, 2023,[38] and October 11, 2023.[39] Minutes from these regular meetings are not available to the public.

57.    Public statements about pricing or signaling can also be used by a cartel.  Here, in connection with its investigation of replacement tyres, the EC stated that it was "concerned that price coordination took place among the inspected companies, including via public communications."[40]  In its guidelines on horizontal competition, the EC states: "public disclosure may in some cases form part of a communication channel between competitors to signal future intentions to behave on the market in a specific way, or to provide a focal point for coordination between competitors."[41]

---

[34] https://www.tiretechnologyinternational.com/news/business/ustma-makes-changes-to-its-director-board.html
[35] https://www.ustires.org/us-tire-manufacturers-association-names-bridgestones-paolo-ferrari-board-chair
[36] https://www.moderntiredealer.com/retail/article/11466086/ustma-announces-four-new-board-members
[37] https://www.ustires.org/us-tire-manufacturers-association-names-bridgestones-paolo-ferrari-board-chair
[38] https://www.ustires.org/ustma-board-directors-holds-spring-meeting-washington-dc-admits-giti-tire-usa-12th-member-company
[39] https://www.moderntiredealer.com/suppliers/article/33013078/michelin-ceo-named-ustma-chairman
[40] https://ec.europa.eu/commission/presscorner/detail/en/ip_24_561
[41] https://competition-policy.ec.europa.eu/document/download/fd641c1e-7415-4e60-ac21-7ab3e72045d2_en?filename=2023_revised_horizontal_guidelines_en.pdf at pg. 108.

**B.    Defendants' Dramatic and Coordinated Tire Price Increases**

58.    Prior to the Class Period, the price level of Tires was stable, changing only by small amounts slowly.    Over the last four years, however, the prices of Tires have seen dramatic increases, driven by lock-step prices increases from the major U.S. Tire manufacturers.



59.    Since at least 2020, Defendants have coordinated price increases to increase their profits.  The justifications offered by the Defendants – that their price increases were due primarily to increased input costs, chiefly stemming from the pandemic and the war in Ukraine –were pretextual and do not fully account for the significant increases in prices over the Class Period.

60.    ProPublica reported in March 2023 that the average price of Tires had risen 21.4% over a two-year period, 70% higher than core inflation.[42]

61.    Defendants coordinated price increases and production limitations through public

---

[42] ProPublica, Overinflated: The Journey of Humble Tire Reveals Why Prices Are Still So High (May 3, 2023), available at https://www.propublica.org/article/inflation-Tires-rubber-imports-high-prices.

announcements and statements on earnings calls.

62.    The following table summarizes Defendants' price increases on passenger and light truck replacement tires between 2021 and 2023:

| Defendant | Effective Date | Price Increase |
|---|---|---|
| Michelin | February 1, 2021 | Up to 5% |
| Continental | March 1, 2021 | Undisclosed |
| Michelin | April 1, 2021 | Up to 8% |
| Goodyear | April 1, 2021 | Up to 8% |
| Pirelli | April 15, 2021 | Up to 7% |
| Bridgestone | May 1, 2021 | Up to 8% |
| Goodyear | June 1, 2021 | Up to 8% |
| Michelin | July 1, 2021 | Up to 6% |
| Continental | July 1, 2021 | Undisclosed |
| Pirelli | July 1, 2021 | Up to 6% |
| Goodyear | September 1, 2021 | Up to 8% |
| Michelin | September 1, 2021 | Up to 14% |
| Continental | October 1, 2021 | Undisclosed |
| Pirelli | October 1, 2021 | Up to 8% |
| Michelin | January 1, 2022 | Up to 12% |
| Goodyear | January 1, 2022 | Up to 12% |
| Continental | January 3, 2022 | Undisclosed |
| Pirelli | January 17, 2022 | Up to 10% |
| Continental | April 1, 2022 | Undisclosed |
| Michelin | April 1, 2022 | Up to 5% |
| Bridgestone | April 1, 2022 | Up to 10% |
| Pirelli | April 11, 2022 | Up to 10% |
| Continental | June 1, 2022 | Undisclosed |
| Michelin | June 1, 2022 | 5-12% |
| Pirelli | June 15, 2022 | Up to 10% |
| Goodyear | July 1, 2022 | Up to 10% |
| Bridgestone | July 1, 2022 | Up to 10% |
| Bridgestone | October 1, 2022 | Up to 9% |

| Michelin | January 1, 2023 | Up to 9% |
|---|---|---|
| Bridgestone | January 1, 2023 | Undisclosed |
| Pirelli | January 15, 2023 | Up 10% |

63.    Effective February 1, 2021, Michelin increased prices on select Michelin and BFGoodrich brand passenger and light truck tires, as well as on select commercial truck tires, up to 5% "due to changing business dynamics of the U.S. market."[43]  During an earnings call for Nokian's 2020 Financial Statement Release, Teemu Kangas-Kärki, the Vice Chair of the Board of Directors, admitted "there is clear pressure to increase prices."[44]

64.    Effective March 1, 2021, Continental increased price on select passenger and light truck tires in the U.S. within the Continental and General brands by an undisclosed amount.[45]

65.    Effective April 1, 2021, Michelin and Goodyear both increased prices.  Michelin increased prices on select Michelin, BFGoodrich and Uniroyal passenger and light truck tires up to 8%, citing "changing business dynamics and rising costs of raw materials."[46]  Goodyear raised prices of its Goodyear, Dunlop and Kelly-brand consumer tires by up to 8%.[47]

66.    Effective April 15, 2021, Pirelli increased prices on passenger and light truck tires in the United States up to 7%, citing "higher price of raw materials and changing market conditions."[48]

67.    Effective May 1, 2021, Bridgestone increased prices on select Bridgestone and Firestone brand passenger and light truck tires up to 8% in the United States and Canada due to

---

[43] https://www.moderntiredealer.com/topic-category/topics/article/11475158/michelin-will-raise-consumer-commercial-prices-on-feb-1-2020-12-19
[44] Nokian, Financial Statement Release 2020, Transcript (Feb. 9, 2021), available at: https://nokiantyres.studio.crasman.fi/pub/web/attachments/interim_reports/Transcription%20Nokian%20Tyres%20 Q4%202022.pdf.
[45] https://www.moderntiredealer.com/topics/industry-news/article/11474953/continental-plans-price-hike-on-plt-tires-2021-01-06
[46] https://www.moderntiredealer.com/topic-category/topics/article/11473824/michelin-will-raise-consumer-tire-prices-on-april-1-2021-03-01
[47] https://www.moderntiredealer.com/topics/industry-news/article/11473768/goodyear-to-increase-consumer-tire-prices-2021-03-03
[48] https://www.moderntiredealer.com/topic-category/topics/article/11473594/pirelli-will-raise-prices-in-us-on-april-15-2021-03-09

"increased business costs and other market dynamics."[49]

68.    Effective June 1, 2021, Goodyear increased prices on Goodyear, Dunlop and Kelly consumer tires by up to 8%. Goodyear blamed the increase on "changing market dynamics in the industry and [a] reflect[tion of] the strong value of the Goodyear brands"—using identical wording from its April 1, 2021, price increase.[50]

69.    Effective July 1, 2021, Michelin, Continental, and Pirelli implemented price increases. Michelin increased prices on certain aftermarket Michelin, BFGoodrich and Uniroyal passenger and light truck tires by up to 6%. Continental increased prices on select Continental and General brand passenger and light truck tires by an undisclosed amount.[51] Pirelli increased prices of passenger and light truck tires by up to 6%, citing higher price of raw materials and changing market conditions.[52]

70.    Effective September 1, 2021, Michelin and Goodyear implemented price increases on consumer tires. Michelin increased prices on certain aftermarket Michelin, BFGoodrich and Uniroyal passenger and light truck tires by up to 14%.[53] Goodyear increased prices on passenger and light truck tires by up to 8%.[54] Nokian also announced that in anticipation of raw material prices that had yet to materialize, it would increase Tire prices for the second time that year.[55]

71.    Effective October 1, 2021, Continental and Pirelli increased prices on Tires. Continental increased prices on some Continental and General passenger and light truck tires by

---

[49] https://www.moderntiredealer.com/site-placement/featured-stories/article/11473222/bridgestone-to-raise-consumer-tire-prices-on-may-1-2021-03-24
[50] https://www.moderntiredealer.com/topics/industry-news/article/11472039/goodyear-plans-another-consumer-tire-price-hike
[51] https://www.moderntiredealer.com/topic-category/topics/article/11471940/continental-will-raise-consumer-tire-prices-in-july-1-2021-05-05
[52] https://www.moderntiredealer.com/topics/industry-news/article/11471596/pirelli-plans-another-price-hike
[53] https://www.tyrepress.com/2021/08/michelin-announces-north-america-price-increases/
[54] https://www.ratchetandwrench.com/topics/news/article/11463860/goodyear-and-cooper-consumer-tire-prices-are-going-up-modern-tire-dealer
[55] Nokian, 2021 Q2 Interim Report Transcript (Aug.3, 2021) at 3.

an undisclosed amount.[56]  Pirelli increased prices on car and light truck tires by up to 8%, citing higher prices of raw materials and changing market conditions.[57]

72.    Effective January 1, 2022, Defendant Michelin implemented price increases up to 12% on select MICHELIN®, BFGOODRICH® and UNIROYAL® passenger and light truck replacement tires.[58]  Similarly, Goodyear raised its prices on consumer tires by up to 12%.[59]

73.    Effective January 3, 2022, Continental increased prices on select Continental and General passenger and light truck tires.[60]

74.    Effective January 17, 2022, Pirelli increased its prices for car and light truck tires of up to 10%.[61]

75.    Effective April 1, 2022, Defendant Continental, Michelin, and Bridgestone increased tire prices.  Continental increased its price on select Continental and General passenger and light trucks by an amount that varied across specific products by brand.[62]  Michelin increased price by 5% on the majority of select passenger and light truck replacement tires.[63]  Bridgestone increased prices by up to 10% on non-winter Bridgestone, Firestone, and Fuzion passenger and light truck replacement tires.[64]

76.    Effective April 11, 2022, Pirelli increased its prices by up to 10%.[65]

77.    Effective June 1, 2022, Defendants Continental, and Michelin each increased prices on tires.  Continental increased its prices on Continental- and General-branded passenger and light

[56] https://www.tirereview.com/continental-tire-announces-price-increase/
[57] https://www.rubbernews.com/tire/pirelli-raising-us-tire-prices-oct-1
[58] https://www.prnewswire.com/news-releases/michelin-implements-price-increase-across-passenger-brands-and-commercial-offers-in-north-american-market-301435108.html
[59] https://www.tirebusiness.com/news/goodyear-raise-north-america-tire-prices-july-1
[60] https://www.tirereview.com/continental-tire-announces-price-increase-2/
[61] https://www.tirereview.com/pirelli-price-increases/
[62] https://www.tirereview.com/continental-tire-announces-price-increase-3/
[63] https://michelinmedia.com/pages/blog/detail/article/c/a1155/#:~:text=Tread%20rubber%20and%20associated%20supplies,2%2C%202022.
[64] https://www.tirereview.com/bridgestone-price-increase-2/
[65] https://www.tirereview.com/pirelli-increases-price-for-tires/

truck tires by an undisclosed amount.[66] Michelin increased prices on the majority of its passenger and light truck replacement tires ranging from 5-12%.[67]

78.    Effective June 15, 2022, Pirelli increased its prices for car and light truck tires by up to 10%.[68]

79.    Effective July 1, 2022, Goodyear and Bridgestone each increased prices by up to 10% on consumer tires.[69]

80.    Effective October 1, 2022, Bridgestone again increased its prices on Bridgestone, Firestone, and Fuzion passenger and light truck tires up to 9%.[70]

81.    Effective January 1, 2023, Michelin and Bridgestone each increased their prices. Michelin increased prices on select passenger and light trucks tires by up to 9%.[71] Bridgestone increased its prices on passenger and light truck replacement tires.[72]

82.    Effective January 15, 2023, Pirelli increased its prices for car and light truck tires by up to 10%.[73]

83.    Between 2021 and 2023, the average price of tires rose 21.4%, more than 70% higher than core inflation.[74]  Prices for Tires have remained high despite inflation easing and effects of the Covid-19 pandemic dissipating.[75]

84.    Defendants' price increases are disproportionate to their increased costs during the pandemic.  For example, in its Q1 2022 earnings call on May 6, 2022, Goodyear Chief Financial Officer Darren Wells told investors "[Goodyear's] increase in the replacement tire prices more

---

[66] https://www.tirebusiness.com/news/conti-raise-us-tire-prices-june-1
[67] https://www.tirereview.com/michelin-price-increase/
[68] https://www.tirereview.com/pirelli-increase-prices-plt-tires/
[69] https://www.tirereview.com/bridgestone-increase-prices/;
https://www.tirebusiness.com/news/goodyear-raise-north-america-tire-prices-july-1.
[70] https://www.tirereview.com/bridgestone-price-increase-3/
[71] https://www.tirereview.com/michelin-price-increases/
[72] https://www.tirereview.com/bridgestone-americas-increased-prices/
[73] https://www.tirereview.com/pirelli-increase-prices-tires/
[74] https://www.propublica.org/article/inflation-tires-rubber-imports-high-prices
[75] *Id.*

than offset [its] costs."[76]  Similarly, in its 2022 annual report, Continental notes that "agreements reached with customers on price adjustments and to offset inflation-related effects had a positive impact on the sales performance of the Automotive group sector."[77]

85.    By 2023, inflation had eased, and supply chain logistics had recovered, but Tire prices remained high, despite excess supply.  For example, in November 2023, the president of the union at the Bridgestone Americas Inc. tire plant in Morrison, Tennessee stated that "Even with [] lower production levels, we still have huge amounts of inventory — more than our warehouse can handle.  Our warehouse is full of truck and bus tires.  In addition, we have 150 to 175 trailers on our plant's property that are completely full of tires."[78]

86.    As ProPublica reported, corporate executives noticed that when they raised prices, consumers continued to purchase their products.  These leaders have declared that they will continue to keep prices high.[79]

87.    In a normal functioning economy, as costs lowered and there was excess supply, one would expect to see lower prices, as inflated prices would lead to a loss of market share.  Yet prices remain high.

### C.    Price Coordination Through Revenue Management Software

88.    Price fixing cartels commonly monitor the conduct of the co-conspirators.  As noted by a Former Deputy Assistant Attorney General in the Antitrust Division, Gary R. Spratling, who was responsible for investigating and prosecuting international cartels, cartels "have shared a number of common characteristics."[80]  On top of agreed-upon prices and volumes, exchanges of

---

[76] https://news.alphastreet.com/the-goodyear-tire-rubber-company-gt-q1-2022-earnings-call-transcript/
[77] https://annualreport.continental.com/2022/en/service/docs/annual-report-2022-data.pdf (See page 73)
[78] https://www.moderntiredealer.com/suppliers/article/33014539/do-tire-tiers-exist-and-are-they-competitive
[79] https://www.propublica.org/article/inflation-tires-rubber-imports-high-prices
[80] Gary R. Spratling, Deputy Assistant Attorney General, Antitrust Division, U.S. Department of Justice, ABA's Criminal Justice Section Presentation "Are the Recent Titanic Fines in Antitrust Case Just the Tip of the Iceberg?" (Mar. 6, 1998).

otherwise competitively sensitive information, and prices charged to customers, a common characteristic among cartels includes "sophisticated mechanisms to monitor and police the agreements."[81]

89.    Through public statements and revenue management software, Defendants monitored their conspiracy.  Goodyear's public statements during the Class Period acknowledge that they tracked other companies' competitively sensitive pricing and sales information, which is also consistent with the existence of Defendants' unlawful agreement to fix prices.  During the 4th Quarter 2021 earnings call, Darren Wells, Chief Administrative Office of Goodyear, explained, "There are 9 competitors that we tend to track, and 7 out of the 9 have announced price increases in the first quarter.  And one of the ones who hadn't raised prices right at the end of last year, so we are seeing very consistent pricing across all the significant industry players."[82]

90.    Defendants' efforts to raise prices became more effective through the use of revenue management software.   At an earnings call in 2022, Rich Kramer, president of Goodyear, explained, "Our data analytics enable us to evaluate day-to-day movement in end- market pricing for ourselves and our competitors, giving us a clear picture of where we are relative to the market and maximizing our ability to capture value for our business."[83]

91.    Torqata started as an analytic arm of American Tire Distributors designed to identify and create efficiencies in Tire distribution.  The company was spun off in 2020 with a mission to allow manufacturers, distributors, and retailers to use data-driven analytics in improving key areas of business performance.  The company's goal is to help its customers quickly respond to market trends to drive more revenue.  The company's VP of Business Development has

---

[81] *Id.*

[82] Goodyear, Q4 2021 Interim Results Earnings Call Transcript (Feb. 11, 2022), available at: https://seekingalpha.com/article/4486435-goodyear-tire-and-rubber-companys-gt-ceo-rich-kramer-on-q4-2021- results-earnings-call.

[83] Goodyear, Q1 2022 Interim Results Earnings Call Transcript (May 6, 2022), available at: https://seekingalpha.com/article/4507956-goodyear-tire-and-rubber-company-gt-ceo-rich-kramer-on-q1-2022- results-earnings-call.

explained that "[m]anufacturers and distributions can capture demand signals to optimize inventory and production."

92.     In its Pricing Insights, Torqata touts its ability to assist its customers in revenue and inventory management through analysis of competitors' private information:



93.     Lizeo Group sells its Retail Price Pro software to Defendants Bridgestone and Continental.  The software allows the Defendants to filter hundreds of lines of pricing data by part number, brand, product, size, and speed rating.  It then allows its customers to set a pricing strategy based on competitor prices.

94.     While Defendants may use different revenue management software, all such programs allow Defendants to analyze large data sets of competitor pricing information in real time, allowing Defendants to monitor the conspiracy by ensuring prices remain at supracompetitive levels.

**D.     Governmental Antitrust Investigation and Dawn Raids**

95.     On January 30, 2024, the EC announced it carried out dawn raids at several companies active in the Tire market in connection with suspect cartel conduct:

> The European Commission is carrying out unannounced inspections at the premises of companies active in the tyres industry in several Member States.  The Commission has concerns that the inspected companies may have violated EU antitrust rules that prohibit cartels and restrictive business practices (Article 101 of the Treaty on the Functioning of the European Union).

22

The products concerned by the inspections are new replacement tyres for passenger cars, vans, trucks and busses sold in the European Economic Area.  The Commission is concerned that price coordination took place amongst the inspected companies, including via public communications.

The Commission officials were accompanied by their counterparts from the relevant national competition authorities of the Member States where the inspections were carried out.[84]

96.    Bridgestone, Goodyear, Continental and Nokian confirmed that they were among the companies targeted by the EU antitrust raids.[85]

97.    According to press reports, Bridgestone stated: "Bridgestone can confirm that the European Commission is conducting an inspection at its European headquarters.  As a responsible company that is committed to fair practices and transparency, Bridgestone is fully cooperating."[86]

98.    Likewise, Goodyear said in a statement: "We confirm that our European offices were subject to unannounced inspections today by the European authorities.  It is too early to speculate as to what exactly may have happened, but we are cooperating fully with the authorities. As this is an ongoing investigation, we cannot provide any further information."[87]

99.    Similarly, Continental reported to the press: "We can confirm that as of today, investigations by European antitrust authorities are taking place at Continental in Germany."[88]

100.    And Nokian confirmed that the EC conducted an announced inspection at its headquarters and that it is "fully co-operating with the authorities."[89]

101.    Pirelli and Michelin also confirmed that they were part of the EC's tire antitrust investigation.[90]

### E.    Defendants are Recidivist Violators of Antitrust Laws

[84] https://ec.europa.eu/commission/presscorner/detail/en/ip_24_561
[85] https://content.mlex.com/#/content/1539333/bridgestone-goodyear-continental-nokian-confirm-eu-antitrust-dawn-raids-update?referrer=portfolio_openrelatedcontent
[86] *Id*.
[87] *Id*.
[88] *Id*.
[89] *Id*.
[90] https://www.msn.com/en-gb/money/other/pirelli-continental-michelin-and-nokian-targeted-in-eu-raids/ar-BB1huRHV

23

102.    The U.S. Tire industry for years has been highly concentrated, and there is a history of antitrust violations by Tire manufacturers.

103.    In 2008, the South African Competition Authority conducted search and seizure operations at the premises of Bridgestone, Dunlop and the South African Tyre Manufacturers' Conference ("SATMC").[91]  These raids resulted in South African's competition authority issuing fines against Goodyear and Continental, while Bridgestone South Africa (Pty) Ltd. escaped a fine after admitting to taking part in the alleged cartel and receiving conditional immunity after filing a leniency application with the regulator.[92]

104.    In 2019, Defendants Bridgestone and Continental were among the 52 automotive suppliers that paid a total of $23 million in settlements for antitrust law violations brought by the California Attorney General.[93]

## V.    EQUITABLE TOLLING AND FRAUDULENT CONCEALMENT

105.    Any applicable statute of limitations for Plaintiff and the Class has been tolled with respect to any claims and rights of action that Plaintiff and the Class have as a result of the unlawful combination and conspiracy alleged in this Complaint.  Defendants are equitably estopped from asserting a statute of limitations defense by reason of Defendants' concealment of the conspiracy.

106.    Plaintiff has had neither actual nor constructive knowledge of the pertinent facts constituting his claims for relief asserted herein.  Plaintiff and members of the Class could not have discovered through reasonable diligence the existence of the conspiracy alleged herein until in or about January 30, 2024, when EC dawn raids became public.

107.    Defendants engaged in a self-concealing conspiracy that did not give rise to facts that would put Plaintiff or the Class on inquiry notice that there was a conspiracy among Defendants.

---

[91] https://irglobal.com/article/tyresome-collusion-tribunal-hearing-into-alleged-tyre-cartel/
[92] https://www.law360.com/articles/192122/s-africa-targets-goodyear-others-in-tire-cartel-case?copied=1
[93] https://www.tyrepress.com/2019/12/tyremakers-among-52-automotive-suppliers-in-us23-million-antitrust-settlement/

108.    Defendants engaged in affirmative acts that were designed to mislead and conceal their illegal conduct.  For example, Defendants gave pretextual justifications for their price increases during the Class Period.  Defendants also misleadingly used a variety of market-based explanations for pricing changes such as blaming increases on market dynamics and changing market conditions.

109.    Accordingly, the statute of limitations based on the claims asserted in the Complaint was tolled by Defendants' fraudulent concealment.

## VI.    CLASS ACTION ALLEGATIONS

110.    Plaintiff brings this action on behalf of himself and as a class action pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following Plaintiff Class:

> All persons or entities that purchased Tires directly from Defendants within the United States from January 1, 2020 until the time that the adverse effects of Defendants' anticompetitive conduct ceased (the "Class Period").

111.    This class definition specifically excludes the following persons or entities: (a) any of the Defendants named herein; (b) any of the corporate Defendants' parent companies, subsidiaries, and affiliates; (c) any of the Defendants' officers, directors, management, employees, subsidiaries, affiliates or agents; (d) all governmental entities; and (e) the judges and chambers staff in this case, as well as any members of their immediate families; and (f) all jurors assigned to this case.

112.    Plaintiff does not know the exact number of Class members, but given the nature of the trade and commerce involved, believes that there are millions of Class members geographically dispersed throughout the United States, such that joinder of all Class members in the prosecution of this action is impracticable.

113.    Plaintiff's claims are typical of the claims of fellow Class members because Plaintiff purchased Tires during the Class Period directly from Defendants.  Plaintiff and all Class members were damaged in the same manner by the same wrongful conduct of Defendants as

25

alleged herein, and the relief sought herein is common to all members of the Class.

114.    Numerous questions of law or fact common to the entire Class—including, but not limited to those identified below—arise from Defendants' anticompetitive and unlawful conduct:

      a.    Whether Defendants contracted, combined or conspired with one another to restrain trade of Tires at any time during the Class Period;

      b.    Whether Defendants' conduct caused the prices of Tires sold directly to wholesalers, retailers, and consumers to be higher than the competitive level as a result of their restraint of trade;

      c.    Whether Plaintiff and the other members of the Class were injured by Defendants' conduct and, if so, the determination of the appropriate Class-wide measure of damages; and

      d.    Whether Plaintiff and other members of the Class are entitled to, among other things, injunctive relief, and, if so, the nature and extent of such relief.

115.    These and other questions of law and fact are common to the Class and predominate over any questions affecting the Class members individually.

116.    Plaintiff will fairly and adequately represent the interests of the Class because he purchased Tires directly from Defendants within the United States during the Class Period and has no conflicts with any other members of the Class.  Furthermore, Plaintiff has retained sophisticated and competent counsel who are experienced in prosecuting antitrust class actions, as well as other complex litigation.

117.    Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief appropriate with respect to the Class as a whole.

118.    This class action is superior to other alternatives for the fair and efficient adjudication of this controversy.  Prosecuting the claims pleaded herein as a class action will eliminate the possibility of repetitive litigation.  There will be no material difficulty in the management of this action as a class action.

119.    The prosecution of separate actions by individual Class members would create the

risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

## VII.   INTERSTATE TRADE AND COMMERCE

120.   Billions of dollars in Tire purchases are entered into each year in interstate commerce in the United States and payment for those transactions flowed in interstate commerce.

121.   Defendants' conspiracy had a direct, substantial, and foreseeable impact on interstate commerce in the United States.

122.   Defendants intentionally targeted their unlawful conduct to affect commerce, including interstate commerce within the United States, by combining, conspiring, and/or agreeing to fix, maintain, stabilize and/or artificially inflate the prices for Tires in the United States.

123.   Defendants' unlawful conduct has a direct and adverse impact on competition in the United States.  Absent Defendants' conspiracy to fix the prices of Tires sold in the United States, prices for Tires would have been determined by a competitive, efficient market.

## VIII.   ANTITRUST INJURY

124.   Defendants' antitrust conspiracy had the following effects, among others:

   (a)   Price competition has been restrained or eliminated with respect to the pricing of Tires;

   (b)   The prices of Tires have been fixed, raised, maintained, or stabilized at artificially inflated levels;

   (c)   Purchasers of Tires have been deprived of the benefits of free and open competition; and

   (d)   Purchasers of Tires paid artificially inflated prices.

125.   The purpose of the conspiratorial and unlawful conduct of Defendants was to fix, raise, stabilize and/or maintain the price of Tires.

126.   The precise amount of the overcharge impacting the price of Tires paid by the Plaintiff and the Class can be measured and quantified using well-accepted methods.

127.   By reason of the alleged violations of the antitrust laws, Plaintiff and the members

of the Class have sustained injury to their business or property, having paid higher prices for Tires than they would have paid in the absence of Defendants' illegal agreement and conspiracy and, as a result, have suffered damages in an amount presently undetermined.  This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent.

## IX.  CLAIMS FOR RELIEF

**COUNT ONE**

**Violation of the Sherman Act, 15 U.S.C. § 1**

**(Conspiracy in Restraint of Trade)**

128.    Plaintiff hereby repeats and incorporates by reference each preceding paragraph as though fully set forth herein.

129.    From at least January 1, 2020, and continuing through the present, the exact dates being unknown and exclusively within the knowledge of Defendants, Defendants entered into and engaged in a continuing combination, conspiracy or agreement to unreasonably restrain trade or commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) by artificially restraining competition with respect to the price of new replacement tires for passenger cars, vans, trucks and buses (Tires) sold within the United States.

130.    The contract, combination, or conspiracy consisted of an agreement among Defendants to fix, raise, stabilize, or maintain at artificially high levels the prices they charged for Tires in the United States.

131.    Among other things, to implement their conspiracy, the Defendants coordinated their pricing policy, agreed on price increases, exchanged information among themselves to implement, adhere and police the agreements they reached.

132.    Defendants' activities constitute a *per se* violation of Section 1 of the Sherman Act.

133.    Defendants' anticompetitive and unlawful conduct has proximately caused injury to Plaintiff and members of the Class by restraining competition and thereby raising, maintaining and/or stabilizing the price of Tires at levels above what would have occurred if competition had prevailed.

28

134.    Plaintiff and the members of the Class have been injured in their business and property by reason of Defendants' violation of Section 1 of the Sherman Act, within the meaning of Section 4 of the Clayton Antitrust Act.

135.    Plaintiff and members of the Class are threatened with future injury to their business and property by reason of Defendants' continuing violation of Section 1 of the Sherman Act, within the meaning of Section 16 of the Clayton Act.

136.    Plaintiff and members of the Class are entitled to recover treble damages, injunctive relief, and attorneys' fees and costs.

## X.    **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Class respectfully request the following relief and judgment against Defendants as follows:

A.  This action may proceed as a class action, with Plaintiff serving as the Class Representatives and his counsel serving as Class Counsel;

B.  Defendants have contracted, combined and conspired in violation of the Sherman Act;

C.  Plaintiff and the Class have been injured in their business and property as a result of Defendants' violations;

D.  Plaintiff and the Class are entitled to recover three-fold damages, and that a joint and several judgment in favor of Plaintiff and the Class be entered against Defendants in an amount subject to proof at trial;

E.  Plaintiff and the Class are entitled to pre-judgment and post-judgment interest on the damages awarded them, and that such interest be awarded at the highest legal rate;

F.  Plaintiff and the Class are entitled to equitable relief suitable to remedy Defendants' past and ongoing restraint of trade, including:

    i.    A judicial determination declaring the rights of Plaintiff and the Class, and the corresponding responsibilities of Defendants; and

    ii.   Issuance of a permanent injunction against Defendants and their parents, subsidiaries, affiliates, successors, transferees, assignees and the respective

officers, directors, partners, agents, and employees thereof and all other persons acting or claiming to act on their behalf from violations of the law as alleged herein.

G.  Defendants are to be jointly and severally responsible financially for the costs and expenses of a Court-approved notice program through post and media designed to give immediate notification of this action and their rights to the Class members;

H.  Plaintiff and the Class recover their costs of this suit, including reasonable attorneys' fees as provided by law; and

I.  Plaintiff and the Class receive such other or further relief as may be just and proper.

## XI.  <u>JURY TRIAL DEMANDED</u>

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims asserted in this Complaint that are so triable.

Dated: February 15, 2024

Respectfully submitted,

/s/ Adam J. Pessin
Adam J. Pessin (NY Attorney ID # 4320248)
Roberta D. Liebenberg (*Pro Hac Vice Forthcoming*)
Jeffrey S. Istvan (*Pro Hac Vice Forthcoming*)
**FINE, KAPLAN AND BLACK, R.P.C.**
One South Broad Street, 23rd Floor
Philadelphia, PA 19107
(215) 567-6565
*rliebenberg@finekaplan.com*
*jistvan@finekaplan.com*
*apessin@finekaplan.com*

30

Jeffrey B. Gittleman (*Pro Hac Vice Forthcoming*)
Meghan J. Talbot (*Pro Hac Vice Forthcoming*)
Zachary A. Pogust (NY Attorney ID # 5676259)
**POGUST GOODHEAD, LLC**
161 Washington Street, Suite 250
Conshohocken, PA 19428
(610) 941-4204
*jgittleman@pogustgoodhead.com*
*mtalbot@pogustgoodhead.com*
*zpogust@pogustgoodhead.com*

*Attorneys for Plaintiff and the Proposed Class*